UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Bryan A. Vadney, § | |
| *Plaintiff*, § | |
| § | |
| v.  § | Civil Action No. H-19-1818 |
| § | |
| Andrew Saul, § | |
| Commissioner of the Social § | |
| Security Administration § | |
| *Defendant*. § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Bryan A. Vadney appeals the Social Security Administration Commissioner's final decision denying his application for social security benefits. (D.E. 1.) Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 8) and Defendant's Cross-Motion for Summary Judgment. (D.E. 10.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

1. **Procedural Posture**

Vadney applied for disability insurance benefits on May 16, 2017. (Tr. 1712, 1804.) In his application, Vadney stated that he was born in 1986. (Tr. 1804.) Vadney claimed he was disabled from August 4, 2015, due to persistent depressive disorder (dysthymia), generalized anxiety disorder, insomnia, chronic strain of the lumbar spine, chronic cervical spine strain, migraines, chronic fatigue syndrome, and sleep

apnea. (Tr. 1804–05, 1817, 1820.) He served four years in the United States Army from May 2005 to May 2009. (Tr. 1821.) He worked as a nurse from January 2015 to August 2015. (Tr. 1821.)

The Social Security Administration (SSA) denied Vadney's application at the initial level on August 10, 2017, and at the reconsideration level on October 11, 2017. (Tr. 1721, 1742.) Vadney requested a hearing. Administrative Law Judge (ALJ) Kimani R. Eason held a hearing on June 6, 2018, in Houston, Texas. (Tr. 1098–1128.) The ALJ issued a decision on July 3, 2018, finding Vadney not disabled. (Tr. 15.) The Appeals Council denied Vadney's request for review on November 5, 2018. (Tr. 1–4.) Vadney filed his complaint in federal court on May 17, 2019, to appeal the ALJ's decision. (D.E. 1.)

**2. Legal Standards**

   **A. Five–Step Process**

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four

steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2016). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments is severe. 20 C.F.R. § 404.1520(c) (2016). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2016); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2016) (the "Listings"). If all the criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2016).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2016). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2016). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2016).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*,

4

892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

Vadney represented himself at his hearing. (Tr. 1100–01.) The ALJ heard testimony from Vadney and a Vocational Expert (VE). (Tr. 1107–26.) Vadney testified that his condition progressed in early 2015, when he was diagnosed with hyperparathyroidism and toxic adenoma. (Tr. 1108.) Vadney testified about his symptoms, medications, and other treatments he received. (Tr. 1108–19.)

The ALJ asked the VE what work someone with Vadney's educational background and age could do if they had the RFC to work at the "light" exertional level with the following limitations:

> The hypothetical individual can occasionally climb ramps and stairs, as well as ladders, ropes, and scaffolds. Furthermore, the hypothetical individual can frequently, but not constantly, balance. The hypothetical individual can occasionally stoop, crouch, kneel, and crawl. Furthermore, the hypothetical individual must avoid all exposure to extreme temperatures, and can tolerate no more than a moderate level of noise, that is noise that you would find in a department or grocery store. The hypothetical individual can understand, remember, and carry out simple one, two, three-step routine and repetitive tasks in a work environment that is free of fast paced production requirements. The hypothetical individual can work at low stress jobs, which I will define as a job that

5

> requires no more than occasional decision-making, and simple work-related decisions, and no more than occasional changes in the work setting. Furthermore, the hypothetical individual can occasionally interaction [sic] with supervisors and co-workers, and have brief, superficial interaction with the general public. Brief, superficial interaction is defined as interaction of no more than five minutes per hour, on simple issues in the workplace.

(Tr. 1123.)

The VE testified that someone with that RFC could not perform any of Vadney's past work but could work in three other jobs: office cleaner, mail clerk, and price marker. (Tr. 1124.)

The VE also testified that if the hypothetical worker was limited to the "sedentary" exertional level, they could work as a document preparer, a sorter, and an addresser. (Tr. 1125.) The VE testified that if that individual was required to be off task 15% of the workday, in addition to normally scheduled work breaks, the person would not be able to maintain any jobs. (Tr. 1125–26.) The VE testified that her testimony did not conflict with the Dictionary of Occupational Titles. (Tr. 1120.) Vadney chose not to examine the VE. (Tr. 1126–27.)

The ALJ issued a decision on July 3, 2018, finding Vadney not disabled. (Tr. 15.)

**4. Analysis**

**A. The ALJ's five-step sequential analysis followed the correct legal rules, and substantial evidence supports his decision.**

(1) Step One

At step one, the ALJ correctly found that Vadney had not engaged in substantial gainful activity since the alleged disability onset date of August 4, 2015, through his date last insured of December 31, 2015. (Tr. 20.)

(2) Step Two

At step two, the ALJ found that Vadney had the following severe impairments: degenerative disc disease, migraine headaches, depression disorder, and anxiety disorder. (Tr. 21.) The ALJ found that Vadney's hyperthyroidism and sleep apnea were non-severe. *Id.*

The ALJ relied on medical records between August 2014 and May 2017 to support his findings. (Tr. 21, 1906–2472.) Those records showed that Vadney had been evaluated and treated for hyperparathyroidism and sleep apnea, which led to improvements. (*E.g.*, Tr. 1953, 1963, 1967, 2027–28, 2067–68, 2093, 2126, 2463, 2465.)

The ALJ's finding at step two is supported by substantial evidence.

(3) Step Three

At step three, the ALJ found that Vadney's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. The ALJ appropriately considered Listing Sections 1.04 (back pain), 12.04 (affective disorders), and 12.06 (anxiety). (Tr. 21–23.)

The ALJ's finding at step three is supported by substantial evidence.

(4) RFC

Before turning to the final two steps of the analysis, the ALJ determined that Vadney had the following RFC:

> [P]erform light work as defined in 20 CFR 404.1567(b) except: the claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds. The claimant can occasionally balance, stoop, crouch, kneel and crawl. No exposure to extreme temperatures or more than a moderate level of noise (that is, noise that you will find in a department or grocery store). The claimant can understand, remember and carryout simple, 1-2-3 step, routine and repetitive tasks in a work environment free of fast pace production requirements. The claimant can work a low stress job defined as a job that requires no more than occasional decision making on simple, work related decisions and no more than occasional changes in the work setting. The claimant can occasionally interact with supervisors and coworkers and have brief, superficial interaction with the general public. Brief, superficial interaction is defined as interaction of no more than 5 minutes per every hour on simple issues in the workplace.

(Tr. 23.)

8

In reaching this finding, the ALJ considered Vadney's medical records from 2013 to 2017 and Vadney's testimony at the hearing. (Tr. 23–28, 1107–19, 1906–2472, 2484–2509, 3125–3256, 3262–3799.) These records support the ALJ's findings.

As opinion evidence, the ALJ considered the RFC assessments by the state agency physicians and psychologists, as well as Vadney's Veterans Affairs (VA) disability ratings. (Tr. 27, 1713–43.) The ALJ noted that he gave no weight to the VA's ratings because they were "based upon different requirements than eligibility for Social Security disability payments." (Tr. 27.) This conclusion is discussed further below.

Agency physician, Dr. Javier Torres assessed Vadney's physical RFC as being capable of occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds, standing and/or walking for a total of 6 hours in an 8-hour workday, sitting for a total of 6 hours in an 8-hour workday, and pushing and/or pulling the same weight as he is capable of lifting and/or carrying. (Tr. 1735.) Dr. Torres also opined that Vadney had no limitations in climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling but that Vadney may frequently climb ladders/ropes/scaffolds. (Tr. 1736.) Dr. Torres found that Vadney had no manipulative, visual, communicative, and environmental limitations. (Tr. 1736.) The ALJ gave little weight to Dr. Torres's opinion and, based on the

medical evidence, found that Vadney's RFC was more limited than Dr. Torres's RFC assessment. (Tr. 27.)

The ALJ considered mental RFC assessments by agency psychologist, Dr. Richard Kasper. (Tr. 27, 1738–40.) Dr. Kasper opined that Vadney had limitations in understanding and memory but was capable of at least simple tasks. (Tr. 1739.) Dr. Kasper also found limitations in sustained concentration but concluded that Vadney could sustain attention and concentrate on simple, repetitive tasks and maintain effort for extended periods over the course of a normal workday or workweek within acceptable pace and persistence standards. *Id.* Dr. Kasper found that Vadney had limitations in his ability to engage in social interaction but found that he "[was] capable of brief superficial interactions with the general public on an infrequent basis, [could] participate in typical but superficial interactions with coworkers and supervisors while completing routine tasks, [and was] able to maintain basic personal grooming and hygiene." (Tr. 1739–40.) Finally, Dr. Kasper found that Vadney had limitations in adaptation but was "able to adapt to changes in a routine structured work setting." (Tr. 1740.) Dr. Kasper found that Vadney could "function best in a low stress slow paced work setting that does not require adjusting to frequent changes or independent goal setting." *Id.* The ALJ accorded great weight to Dr. Kasper's opinion, concluding that his opinion was consistent with the medical evidence. (Tr. 27.)

The ALJ also noted that he considered Vadney's ongoing psychiatric treatment and complaint of chronic fatigue. (Tr. 27.) However, the ALJ concluded that medical evidence did not support a finding of disability because the medical evidence showed that Vadney's mental status exams "[had] been essentially normal other than his depressed mood and some anxiety." (Tr. 27, 1943, 2039, 2062, 2099, 2089, 2101, 2144, 2147, 2166, 3245, 3250.)

Substantial evidence supports the ALJ's RFC determination.

(5) Step Four

At step four, the ALJ found that Vadney could not perform any past relevant work, relying on the VE's testimony. (Tr. 28, 1119–24.) Substantial evidence supports the ALJ's finding at step four.

(6) Step Five

At step five, the ALJ found that Vadney could find employment in other work existing in significant numbers in the national economy. (Tr. 28–29.) To support this determination, the ALJ considered Vadney's age, education, work experience, RFC, and the VE's testimony. (Tr. 28–29, 1124–26.)

Substantial evidence supports the ALJ's finding at step five.

**B. Vadney's sole argument lacks merit.**

Vadney contends that the ALJ erred by assigning no weight to his VA disability ratings. Specifically, Vadney argues that the ALJ should have assigned

11

more weight to the VA's disability rating that he had the following service-connected disabilities:

> NEUROSIS, GEN ANX DIS (70%)
> LUMBOSACRAL OR CERVICAL STRAIN (40%)
> MIGRAINE HEADACHES (30%)
> TINNITUS (10%)

(D.E. 8 at 5.) Vadney cites to the disability rating in the record he submitted to the Appeal's Council as part of his request for review, but the same disability ratings appear in records marked as Exhibit 9F, which the ALJ considered in his analysis. (Tr. 25, 3281.[1]) Vadney points to no other findings by the VA that might have changed the ALJ's disability determination.

The governing social security regulation provides that disability decisions by governmental agencies, such as the VA, are not binding on the Commissioner because those decisions are made according to separate rules. 20 C.F.R. § 404.1504 (2018). Prior to the amendment of the regulation in 2017, courts held that a VA rating of disability is "evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *See, e.g.*, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The regulation was amended in 2017 to provide that the Commissioner need not "provide any analysis in [the] determination or decision about a decision made by any other governmental agency or a nongovernmental

---

[1] The same ratings can be found on other parts of 9F. (Tr. 3283, 3285, 3290, 3292, 3294, 3296, 3301, 3303, 3306–08, 3310, 3312, 3321, 3326, 3328, 3341, 3343–44.)

entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (2018) (binding all claims filed on or after March 27, 2017). However, the Commissioner is required to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that the Commissioner receives as evidence. *Id.*

The amended version of 20 C.F.R. § 404.1504 governs in Vadney's case because he filed for disability benefits on May 16, 2017. (Tr. 1712, 1804.) The ALJ satisfied his obligations under the amended regulation because he considered the VA's disability ratings and the supporting medical records. Vadney's VA records were marked as Exhibits 1F, 4F, 6F, and 7F. The ALJ considered the VA records throughout his decision. (Tr. 21, 25–26.) The ALJ also considered Exhibit 9F, which includes the subject disability rating. (Tr. 25, 3281.) Therefore, the ALJ's decision is consistent with the requirements of 20 C.F.R. § 404.1504 (2018).

To the extent that the cases decided before the amendment to the regulation govern this court's review of the ALJ's decision, the court finds no error. *Cf. Chambliss*, 269 F.3d at 522 (requiring the ALJ to consider the VA's ratings and explain the weight assigned to them). Here, the ALJ reviewed the VA's ratings and explained that he assigned no weight to the ratings because they "are based upon different requirements than eligibility for Social Security disability payments." (Tr. 27.) Courts have held that similar explanations satisfied the ALJ's duty. *See,*

13

*e.g.*, *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 535 (6th Cir. 2019) (finding no reversible error where the ALJ "acknowledged the VA's disability rating but explained that the VA uses different standards for making disability determinations"); *Grissett v. Comm'r of Soc. Sec.*, 695 F. App'x 497, 502 (11th Cir. 2017) (same); *Soliz v. Saul*, No. CV H-18-2775, 2019 WL 6970784, at *7 (S.D. Tex. Nov. 26, 2019) (same), *adopted by* No. CV H-18-2775, 2019 WL 6910158 (S.D. Tex. Dec. 19, 2019).

The ALJ considered other medical record evidence, from Vadney's treating sources other than the VA, and concluded that the record as a whole did not justify finding Vadney disabled. As discussed at length above, the ALJ reached his determination based on his thorough review of Vadney's medical record evidence, and the ALJ's findings are supported by substantial evidence. *See supra* Part 4.A. Vadney does not suggest what in his VA records would alter this court's finding that the ALJ's decision is supported by substantial evidence. Vadney does not identify a severe impairment that the ALJ should have considered; he does not argue that the RFC was improper; and he does not point to any fact that, if considered by the ALJ, would change the outcome of this case.

Vadney relies on *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000), to argue that the ALJ should have given some weight to the VA's disability ratings. His reliance on *Loza* is inapposite. *Loza* was decided before 20 C.F.R. § 404.1504 was amended. In

addition, *Loza* and Vadney's case are factually distinguishable. In *Loza*, the VA had found that the claimant was "100 percent permanently disabled, service connected, and therefore entitled to veteran's disability benefits." *Id.* at 380. The claimant had received treatment from VA doctors for twenty-four years, and he had never been seen by any doctors outside of the VA system. *Id.* at 381. Yet, the ALJ in *Loza* "did not mention or scrutinize" the VA's disability ratings. *Id.* at 395. It was in this context that the court found that "[a] VA rating of 100 percent service connected disability is not legally binding . . . but it is evidence that is entitled to great weight and should not have been disregarded by the ALJ." *Id.* at 394–95. Moreover, the ALJ's failure to consider the VA rating in *Loza* was just one of many problems with the administrative decision.

Here, ALJ Eason considered the VA's disability ratings and explained why he did not assign any weight to those ratings. (Tr. 27.) ALJ Eason considered Vadney's medical record evidence from the VA and other treatment sources. As is now required by regulation, the ALJ in this case considered the very medical evidence upon which the VA rating was based.

The court finds no reversible error.

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's finding at each of the five sequential steps. The ALJ's

decision is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on June 19, 2020.

Peter Bray
United States Magistrate Judge